UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| TLD AMERICA CORP.,<br>    Plaintiffs,<br><br>    v.<br><br>MAZUMA CAPITAL CORP., ET AL.,<br>    Defendants. | No. 3:15-cv-39 (SRU) |

### RULING ON MOTION TO DISMISS AND ORDER OF TRANSFER

Plaintiff TLD America Corporation ("TLD") brought this action against Mazuma Capital Corp. ("Mazuma") and Republic Bank alleging various contract, tort and CUTPA claims related to the purchase of a piece of air cargo equipment known as a pallet transporter. *See* Compl. (doc. # 1). On June 18, 2015, I held oral argument on the defendants' motion to dismiss for lack of personal jurisdiction and improper venue (doc. # 13). After hearing the parties' arguments I issued an oral ruling denying in part and taking under advisement in part the defendants' motion (doc. # 32). I ruled that defendant Republic Bank is not subject to personal jurisdiction in Connecticut and defendant Mazuma Capital is subject to personal jurisdiction on the contract claims only. At a telephone conference on July 21, 2015, I ordered the parties to submit supplemental briefing on whether I may transfer the part of the case that cannot proceed in this court to the District of Utah, which appears to have jurisdiction over the parties and claims, while retaining jurisdiction over the breach of contract claim against Mazuma. *See* Memorandum of Telephone Conference, Order (doc. # 36). For the following reasons, I conclude that the entire case should be transferred to the District of Utah.

1

**I.     Background**

TLD is a New York corporation with its principal place of business in Windsor, Connecticut.  It maintains a production facility in Saint Lin, France.  TLD is a self-professed leader in the design, assembly, distribution and after-sales support of aviation ground support equipment.  Mazuma is a Utah corporation engaged in providing equipment leasing and financing to small and mid-size companies.[1]  Republic is a Utah-based industrial loan company specializing in the purchase of equipment lease contracts and related services.

On or about March 22, 2012, non-party Evergreen Aviation Ground Logistics Enterprise, Inc. ("Evergreen"), a Delaware corporation with its principal place of business in Oregon, submitted a "purchase request" for a pallet transporter to TLD at its Connecticut office.  The projected cost of the pallet transporter was $187,555, which included a base price of $168,555 plus an estimated $19,000 to ship the pallet transporter from France to Evergreen's location at John F. Kennedy Airport ("JFK").  The purchase request also contemplated a 30% deposit ($50,567) due at the time of order.  *See* Compl. Ex. A.

On March 27, 2012, TLD sent Evergreen a quote to sell the pallet transporter described in Evergreen's purchase request.  Although Evergreen submitted the purchase request, Evergreen was never the intended owner of the pallet transporter.  Evergreen had a master lease with defendant Mazuma and the pallet transporter was to be added to that lease.  On April 8, 2012, Mazuma assigned all of its rights and interest in the Evergreen lease to defendant Republic, which it regularly did.

In response to the quote, on April 17, 2012, Mazuma sent TLD a purchase order ("PO") for the pallet transporter described in Evergreen's purchase request and TLD's quote at the price

---

[1] The complaint notes that Mazuma was recently acquired by a former competitor, Onset Financial, Inc., also based in Utah, but it continues to operate as a separate company.  Compl. ¶ 7.

listed therein.  The PO makes it clear that Mazuma will be the owner/lessor of the pallet transporter and Evergreen is Mazuma's lessee.  *See* Compl. Ex. D.  On April 24, 2012, TLD sent Mazuma an invoice in the amount of $50,567, the 30% down payment for the pallet transporter.  On May 7, 2012 Mazuma wired the $50,567 down payment funds for the purchase of the pallet transporter to TLD by way of the Citibank branch in Hauppauge, New York.  Beyon Aff. Ex. 2.

TLD manufactured the pallet transporter and sent it from its facility in France to JFK.  The transporter was off-loaded at Port Newark, New Jersey on October 28, 2012.  All would have been well, except that Superstorm Sandy hit New Jersey the next day and caused a tidal surge.  As a result, the pallet transporter was submerged under four to five feet of salt water, which caused serious damage.  TLD's insurance carrier declared the transporter a total loss in late November 2012.[2]  TLD sought compensation from Mazuma for the pallet transporter, but Mazuma contended that the risk of loss never passed, because the pallet transporter never arrived at its destination – John F. Kennedy Airport in New York.

Notwithstanding that representation, Mazuma and Republic commenced an action against Evergreen in Utah state court on November 9, 2012 in which they asserted, inter alia, that they owned the pallet transporter.  On January 25, 2013, Republic and Mazuma obtained a default judgment against Evergreen in the Utah action.  The judgment was entered in Oregon state court and the defendants proceeded to attach and/or garnish equipment that Evergreen was preparing to sell to a third party.  Evergreen ultimately settled with the defendants pursuant to a settlement agreement executed on April 26, 2013.  As part of the settlement, Mazuma and Republic were required to "relinquish and assign to Evergreen any interests either may have in the [transporter],

---

[2] Of the four parties involved it appears that only TLD and Mazuma had insurance.  TLD's insurer investigated under a reservation of rights, because of a term in TLD's forms that indicates that risk of loss passed when the transporter was made available at TLD's premises in St. Lin, France.  Whether that form controls is a key aspect of TLD's breach of contract claims against Mazuma.

3

and agree to execute the documents necessary to transfer such interests in and title to the [transporter] to Evergreen." Compl. Ex. F.

TLD, of course, did not want to hand over the pallet transporter to Evergreen when Mazuma and Republic were still refusing to pay for it.  But TLD's hand was forced after Evergreen (along with its corporate parent and affiliates) filed for Chapter 7 liquidation in Delaware at the end of 2013.  The Chapter 7 trustee asserted that the pallet transporter was part of the bankruptcy estate and ordered TLD to release it.  TLD acquiesced to the trustee's demands and turned over the transporter.  TLD received only half the costs of storing the pallet transporter since November 2012 in exchange for relinquishing control of the machine.

After further efforts to resolve the ownership dispute proved futile, TLD commenced this action against Mazuma and Republic.  TLD asserted claims against Mazuma, in its capacity as "Evergreen's lessor, Republic's assignor or agent for either," for breach of contract, breach of the implied covenant of good faith and fair dealing, and promissory estoppel.  TLD asserted claims against Mazuma and Republic for unjust enrichment, conversion and CUTPA violations.

The defendants moved to dismiss for lack of personal jurisdiction and improper venue. On June 18, 2015, after argument, I denied that motion with respect to the contract claims against Mazuma, but concluded that the court lacked personal jurisdiction over Mazuma and Republic, because neither possessed sufficient minimum contacts with Connecticut with respect to the tort claims.  Neither defendant had moved in the alternative for a transfer of venue, but I indicated that I was inclined to transfer those claims to the District of Utah, where both defendants are headquartered and where many of the events giving rise to those claims occurred, rather than dismiss them altogether.  The parties submitted supplemental briefs on the issue of

transfer of venue, particularly my ability to sever and transfer the tort claims to Utah while retaining jurisdiction over the contract claims against Mazuma.

## II.     Discussion

A district court has the power to transfer a case to another judicial district under 28 U.S.C. §§1404(a) or 1406(a) if it is in the interests of justice to do so, even where it lacks personal jurisdiction over one or more defendants.  *See Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962); *SongByrd, Inc. v. Estate of Grossman*, 206 F.3d 172, 179 n.9 (2d Cir. 2000).  "A district court may transfer a case on a motion by either party or *sua sponte* on its own motion." *WorldCare Corp. v. World Ins. Co.*, 767 F. Supp. 2d 341, 365 (D. Conn. 2011). "Whether dismissal or transfer is appropriate lies within the sound discretion of the district court." *Minnette v. Time Warner*, 997 F.2d 1023, 1026 (2d Cir. 1993). Transfer is favored, however, to remove procedural obstacles like lack of personal jurisdiction or improper venue.  *Rivera v. Armstrong*, No. 3:03CV1314(DJS)(TPS), 2007 WL 683948, at *3 (D. Conn. Mar. 2, 2007) (citing *Sinclair v. Kleindienst*, 711 F.2d 291, 294 (D.C. Cir. 1983)).

As discussed above, Mazuma and Republic are both citizens of Utah.  Moreover, many of the acts giving rise to TLD's tort claims against Mazuma and Republic occurred in the course of the defendants' litigation against Evergreen in Utah state court.  Therefore, it is logical to transfer the case to the District of Utah rather than dismiss the tort claims altogether.  TLD, however, requests that I sever and transfer only the tort claims, while retaining jurisdiction over the breach of contract claim against Mazuma.[3]

---

[3] The defendants, for their part, seek reconsideration of my decision that the court has personal jurisdiction over Mazuma with respect to the contract claims.  Absent reconsideration, they prefer transfer of the entire case.  The standard for granting motions for reconsideration is strict.  Motions for reconsideration "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).  Motions for reconsideration will not be granted where the party merely seeks

5

A district court may transfer an entire case or sever claims against parties over which it lacks jurisdiction under Fed. R. Civ. P. 21 and transfer only those claims and parties. *See, e.g.*, *id.*; *Westavco Corp. v. Viva Magnetics Ltd.*, No. 00Civ.9399(LTS)(KNF), 2003 WL 21136729, at *3 (S.D.N.Y. May 15, 2003); *In re Merrill Lynch & Co., Inc. Research Rep. Securities Lit.*, 214 F.R.D. 152 155 (S.D.N.Y. 2003). "The decision whether to sever a claim 'is committed to the sound discretion of the trial court.'" *Costello v. Home Depot U.S.A., Inc.*, 888 F. Supp. 2d 258, 263 (D. Conn. 2012) (quoting *Greystone Cmty. Reinv. Ass'n v. Berean Capital, Inc.*, 638 F. Supp. 2d 278, 293 (D. Conn. 2009)). In determining whether to sever claims or parties under Rule 21, courts consider whether: "(1) the claims arise out of the same transaction or occurrence; (2) the claims present some common question of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) prejudice would be avoided; and (5) different witnesses and documentary proof are required for the separate claims." *Id.*; *see also Cox v. Bland*, No. CIVA 3:00CV311(CFD), 2002 WL 663859, at *4 (D. Conn. Mar. 26, 2002) (internal citations omitted); *In re Merrill Lynch*, 214 F.R.D. at 155 ("In exercising its discretion under Rule 21, the court must consider principles of fundamental fairness and judicial efficiency" including whether severance would "prejudice any party, or would result in undue delay.").

Severance would be inappropriate in this case. As TLD notes in its brief, severing the tort claims and having those claims proceed in Utah would result in "entirely independent actions being tried to independent judgments." Pl.'s Supp. Br. 6 (citing *Gerace v. Cliffstar Corp.*, No.

---

to relitigate an issue that has already been decided. *Id.* The three major grounds for granting a motion for reconsideration in the Second Circuit are: (1) an intervening change of controlling law, (2) the availability of new evidence, or (3) the need to correct a clear error or prevent manifest injustice. *Virgin Atlantic Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (citing 18 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 4478 at 790 (1981)). I considered the Supreme Court's personal-jurisdiction decisions in my original ruling and decline to revisit that ruling now. Regardless, the defendants will suffer no prejudice, because the entire case will be transferred to Utah, where both defendants indisputably have sufficient contacts to satisfy the requirements of due process.

05-CV-65S, 2009 WL 5042621, at *1 (W.D.N.Y. Dec. 15, 2009) (citation omitted); *Cestone v. General Cigar Holdings, Inc.*, No. 00 Civ. 3686 (RCC)(DF), 2002 WL 424654, at *2 (S.D.N.Y. Mar. 18, 2002)).  Yet, those independent actions would be substantially intertwined.  Ownership of the pallet transporter would be a significant, if not dispositive issue in both cases.  Both actions would require litigation of many if not most of the same facts and would involve overlapping witnesses and documentary evidence.  It would be a waste of judicial resources to have two separate discovery processes and two separate trials.  Moreover, the risk of inconsistent judgments would be considerable if the cases proceeded on parallel tracks at the same time.  That risk could be mitigated by staying one of the cases pending resolution of the other, but determination of ownership in the first action likely would have a preclusive effect in the other.  It therefore makes little sense to retain jurisdiction over the contract claims against Mazuma while transferring the rest of the case to Utah.  Instead, the entire case should be transferred to the District of Utah where it may proceed as a single action.

### III. Conclusion

For the foregoing reasons, the defendants' motion to dismiss for lack of personal jurisdiction and improper venue (doc. # 13) is DENIED and the case is ordered transferred to the District of Utah.  The clerk shall effect the transfer and close the file.

It is so ordered.

Dated at Bridgeport, Connecticut, this 28th day of August 2015.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge